FILED
2016 Jun-30  PM 07:08
U.S. DISTRICT COURT
N.D. OF ALABAMA

## UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## SOUTHERN DIVISION

| | |
|---|---|
| **EDNA MAY RICHARDS,** } | |
| } | |
| **Plaintiff,** } | |
| } | |
| **v.** } | **Case No. 2:14-CV-2179-MHH** |
| } | |
| **CAROLYN W. COLVIN,** } | |
| **Commissioner of the** } | |
| **Social Security Administration,** } | |
| } | |
| **Defendant.** } | |

## MEMORANDUM OPINION

Pursuant to 42 U.S.C. §1383(c), plaintiff Edna May Richards seeks judicial review of a final adverse decision of the Commissioner of Social Security. The Commissioner denied Ms. Richards's claim for supplemental security income. After careful review, the Court affirms the Commissioner's decision.

## I.    PROCEDURAL HISTORY

Ms. Richards applied for supplemental security income on September 8, 2011. (Doc. 7-6, pp. 2-8). Ms. Richards alleges that her disability began September 8, 2011. (Doc. 7-6, p. 2). The Commissioner initially denied Ms. Richards's claim on January 25, 2012. (Doc. 7-5, p. 3). Ms. Richards requested a hearing before an Administrative Law Judge. (Doc. 7-5, pp. 10-12). The

Administrative Law Judge (i.e., the ALJ) issued an unfavorable decision on May 10, 2013.  (Doc. 7-3, p. 17).  On September 9, 2014, the Appeals Council declined Ms. Richards's request for review (Doc. 7-3, p. 2), making the Commissioner's decision final and a proper candidate for this Court's judicial review.  *See* 42 U.S.C. § 1383(c).

## II.    STANDARD OF REVIEW

The scope of review in this matter is limited.  "When, as in this case, the ALJ denies benefits and the Appeals Council denies review," the Court must "review the ALJ's 'factual findings with deference' and [his] 'legal conclusions with close scrutiny.'"  *Riggs v. Comm'r of Soc. Sec.*, 522 Fed. Appx. 509, 510-11 (11th Cir. 2013) (quoting *Doughty v. Apfel,* 245 F.3d 1274, 1278 (11th Cir. 2001)).

The Court must determine whether there is substantial evidence in the administrative record to support the ALJ's factual findings.  "Substantial evidence is more than a scintilla and is such relevant evidence as a reasonable person would accept as adequate to support a conclusion."  *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1158 (11th Cir. 2004).  When evaluating the administrative record, the Court may not "decide the facts anew, reweigh the evidence," or substitute its judgment for that of the ALJ.  *Winschel v. Comm'r of Soc. Sec. Admin.*, 631 F.3d 1176, 1178 (11th Cir. 2011) (internal quotations and citation omitted).   If substantial evidence supports the ALJ's factual findings, then the Court "must

2

affirm even if the evidence preponderates against the Commissioner's findings." *Costigan v. Comm'r, Soc. Sec. Admin.*, 603 Fed. Appx. 783, 786 (11th Cir. 2015) (citing *Crawford*, 363 F.3d at 1158).

With respect to the ALJ's legal conclusions, the Court must determine whether the ALJ applied the correct legal standards. If the Court finds an error in the ALJ's application of the law, or if the Court finds that the ALJ failed to provide sufficient reasoning to demonstrate that the ALJ conducted a proper legal analysis, then the Court must reverse the ALJ's decision. *Cornelius v. Sullivan*, 936 F.2d 1143, 1145-46 (11th Cir. 1991).

## III.   SUMMARY OF THE ALJ'S DECISION

To determine whether a claimant has proven that she is disabled, an ALJ follows a five-step sequential evaluation process. The ALJ considers:

> (1) whether the claimant is currently engaged in substantial gainful activity; (2) whether the claimant has a severe impairment or combination of impairments; (3) whether the impairment meets or equals the severity of the specified impairments in the Listing of Impairments; (4) based on a residual functional capacity ("RFC") assessment, whether the claimant can perform any of his or her past relevant work despite the impairment; and (5) whether there are significant numbers of jobs in the national economy that the claimant can perform given the claimant's RFC, age, education, and work experience.

*Winschel*, 631 F.3d at 1178.

In this case, the ALJ found that Ms. Richards has not engaged in substantial gainful activity since September 8, 2011, the alleged onset date. (Doc. 7-3, p. 22).

The ALJ determined that Ms. Richards suffers from the following severe impairments: bilateral osteoarthritis of the knees, obesity, hypertension, carpal tunnel syndrome of the right upper extremity, major depressive disorder with psychotic features, and borderline intellectual functioning.  (Doc. 7-3, p. 22).  The ALJ also found that Ms. Richards suffers from right upper extremity acromial bursitis, but the impairment is not severe.  (Doc. 7-3, p. 22).  Based on a review of the medical evidence, the ALJ concluded that Ms. Richards does not have an impairment or a combination of impairments that meets or medically equals the severity of any of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1.  (Doc. 7-3, p. 23).

Given Ms. Richards's impairments, the ALJ evaluated Ms. Richards's residual functional capacity. The ALJ determined that Ms. Richards has the RFC to:

> perform light work as defined in 20 C.F.R. 416.967(b) except that she can no more than occasionally climb ladders, ropes or scaffolds. She can frequently climb ramps or stairs, balance and stoop, and no more than occasionally crouch, kneel, or crawl. She should avoid any exposure to unprotected heights. From a non-exertional mental perspective, she is limited to carrying out, understanding, and remembering simple instructions. She can do so for 8 hours with normal and customary two hour periods of time between breaks. The setting should have no more than occasional, gradually introduced, well explained changes, with occasional interaction with the public and coworkers, and no tandem tasks. As it relates to the learning of the job or performance of the job, no reading or writing should be required; the tasks must be able to be demonstrated so that the

4

individual can learn them without any reading of instructions or writing.

(Doc. 7-3, pp. 24-25) The ALJ also found that Ms. Richards's past work as a housekeeper did not rise to the level of earnings necessary to qualify as past relevant work. (Doc. 7-3, p. 30). Relying on testimony from a vocational expert, the ALJ concluded that jobs exist in the national economy that Ms. Richards can perform, including cleaner/housekeeper, label marker, and automatic car wash attendant. (Doc. 7-3, p. 31). Accordingly, the ALJ determined that Ms. Richards has not been under a disability within the meaning of the Social Security Act. (Doc. 7-3, p. 31).

## IV.   ANALYSIS

Ms. Richards argues that she is entitled to relief from the ALJ's decision because the ALJ's residual functional capacity findings for light work are not consistent with the evidence in the administrative record concerning severe and non-severe impairments and because the ALJ erred by giving little weight to an opinion from Ms. Richards's treating psychiatrist. The Court examines each issue in turn.

### A.   Substantial Evidence Supports the ALJ's RFC Determination that Ms. Richards Can Perform Light Work.

When an ALJ makes a residual functional capacity or RFC assessment, the ALJ evaluates an applicant's ability to perform work activities on a sustained basis

despite the limitations that the applicant's impairments create. *Mafa v. Comm'r of Soc. Sec*., 291 Fed. Appx. 261, 263 (11th Cir. 2008) (citing 20 C.F.R § 404.1545 (a)). An ALJ must "consider[] all of the evidence in the record in determining the claimant's RFC." *Himes v. Comm'r of Soc. Sec.,* 585 Fed. Appx. 758, 764 (11th Cir. 2014). Here, the ALJ found that Ms. Richards has the RFC to perform light work with a number of postural and non-exertional limitations. (Doc. 7-3, pp. 24-25).

Light work is defined as "lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds…a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls." 20 C.F.R. § 404.1567(b). Light work also requires that a claimant stand or walk for up to 6 hours and sit for up to 2 hours in an 8-hour workday. SSR 83-10, 1983 WL 31251, at * 6.

Ms. Richards contends that the evidence in the administrative record is not sufficient to support the ALJ's conclusion that she has the residual functional capacity to perform light work because the ALJ did not account for the findings of consultative examiner Shabrez Tariq. (Doc. 11, p. 6). On October 29, 2011, Dr. Tariq performed a consultative examination at the request of the Social Security Administration. (Doc. 7-10, pp. 32-35). Under the heading "General Findings,"

Dr. Tariq noted:  "[Ms Richards] has right-sided Phalen's test and right hand is positive.  Tinel was equivocal.  She had bilateral crepitus in her knees, left knee more severe that the right one.  She has medial joint line tenderness."  (Doc. 7-10, p. 35).  Dr. Tariq made the following diagnoses:  "1. Bilateral knee osteoarthritis and severe crepitus with medial join line tenderness, left worse than right.  2. Right carpal tunnel syndrome with positive right Phalen's test.  3. Left shoulder pain."  (Doc. 7-10, p. 35).

As the ALJ recognized, Dr. Tariq found that Ms. Richards's impairments do not limit her activity significantly.  (Doc. 7-3, p. 26).  The ALJ explained that Dr. Tariq noted that despite her complaints about pain, Ms. Richards could walk to the exam room without assistance, "sit comfortably in a chair," and "get on and off the examination table without difficulty."  (Doc. 7-3, p. 26).  Dr. Tariq's written report supports the ALJ's finding.  (*See* Doc. 7-10, p. 33).  Moreover, notwithstanding complaints about knee and shoulder pain (for which, Dr. Tariq noted, Ms. Richards had no had history of injury or trauma), the ALJ explained that Dr. Tariq found that Ms. Richards had full range of motion in her shoulders and knees.  (Doc. 7-3, p. 26).  Again, Dr. Tariq's report substantiates the ALJ's finding.  (*See* Doc. 7-10, pp. 32-35).

A finding of disability hinges on the functional limitations that accompany a condition, not the existence of the condition itself.  *See Obsborn v.Barnhart*, 194

Fed. Appx. 654, 667 (11th Cir. 2006) ("the 'severity' of a medically ascertained disability must be measured in terms of its effect upon ability to work, and not simply in terms of deviation from purely medical standards of bodily perfection or normality"); *Wind v. Barnhart*, 133 Fed. Appx. 684, 690 (11th Cir. 2005) (noting that a diagnosis alone does not constitute a limitation); *see also* 20 C.F.R. § 404.1521(a) ("An impairment or combination of impairments is not severe if it does not significantly limit your physical or mental ability to do basic work activities").  Because Dr. Tariq's records do not indicate that he found that Ms. Richards's knee and shoulder pain and carpal tunnel syndrome significantly limited her functioning, it was within the ALJ's province, when considering the entire record, to determine that despite Ms. Richards's physical impairments, Ms. Richards could perform light work with various postural limitations.

Reports from other examining physicians are consistent with Dr. Tariq's assessment.  Dr. Ashima Malik examined Ms. Richards on July 19, 2012.  (Doc. 7-10, p. 94).  During this visit, Ms. Richards complained about pain in her right shoulder and neck pain.  (Doc. 7-10, p. 94).  Ms. Richards denied tingling or loss of sensation in her hands, and Dr. Malik noted 5/5 strength in Ms. Richards's upper right extremity with pain present past 90 degrees of movement.  Dr. Malik treated Ms. Richards's right arm acromial bursitis with Solu-Medrol and a lidocaine injection.  (Doc. 7-10, p. 95).

When Ms. Richards saw Dr. Vyjayanthi Ganga a few months later on November 6, 2012, Ms. Richards reported that the injection that she received from Dr. Malik helped her shoulder pain improve, but she stated that she still experienced shoulder pain and bilateral knee pain. Dr. Ganga made no examination findings or diagnoses concerning Ms. Richards's shoulder pain, and Ms. Richards declined Tramadol or Ultram as treatment for her osteoarthritis. (Doc. 7-10, p. 100). When Ms. Richards saw Dr. Ganga again on December 11, 2012, Ms. Richards again refused Tramadol or Ultram for her osteoarthritis. Instead, she continued using Celebrex and Tylenol to treat her pain. (Doc. 7-10, pp. 104-105).

When Ms. Richards saw Dr. Malik and Dr. Ganga in 2012, she described no symptoms resulting from her carpal tunnel syndrome, and she has not reported symptoms since October 29, 2011 when she was initially diagnosed. (Doc. 7-10, pp. 94, 97-98).

Accordingly, the ALJ's residual functional capacity findings are consistent with the medical evidence in the record.

Ms. Richards argues that the ALJ's RFC assessment is not supported by substantial evidence because the ALJ failed to properly account for Ms. Richards's obesity. (Doc. 7, pp. 6-7). The Court disagrees.

Social Security Ruling 02-1p states that an ALJ must assess the impact that a claimant's obesity will have on her ability to work and must recognize specifically the limitations in functions such as climbing, balancing, stooping, or crouching that a claimant may experience because of her obesity. *See* SSR 02-1p, 2002 WL 34686281, at *5. In his opinion, the ALJ discussed Ms. Richards's obesity.[1] At the outset of his opinion, the ALJ found that Ms. Richards's obesity is a severe impairment. (Doc. 7-3, p. 22). Later in the opinion, the ALJ explained:

> [Ms. Richards's] obesity, while not stated by any physician to be disabling, was considered in terms of its possible effects on [her] ability to work. Although obesity is no longer a listed impairment, the undersigned has considered Social Security Ruling 02-1p, effective September 12, 2002, which states that an individual with obesity will be found to meet the requirements of a listing if there is an impairment that, in combination with obesity, meets the criteria of a listing. Obesity may be found medically equivalent to a listed impairment if the obesity causes the same functional limitations as other impairments. It may also be determined that the combination of obesity and other impairments results in signs, symptoms, and laboratory findings that are of equal medical significance to one of the listings. In the present case, the claimant's obesity is not so severe as to prevent all ambulation, reaching, orthopaedic or postural maneuvers. It does, however, in combination with the claimant's bilateral osteoarthritis of the knees, reduce her abilities to climb, balance, stoop, crouch, kneel, and crawl. A reduction to work with light exertional demands and additional appropriate work restrictions is therefore warranted, and these limitations are accounted for in the residual functional capacity as determined herein.

---

[1] According to her medical records, in 2011, Ms. Richards weighed approximately 203 pounds and was 5 foot 4 inches tall. (Doc. 7-10, p. 33). Her BMI was 34.8. (Doc. 7-10, p. 46). Consequently, she is considered obese based on standards promulgated by the National Heart, Lung and Blood Institute. (http://www.nhlbi.nih.gov).

(Doc. 7-3, p. 27).   The ALJ properly applied Social Security Ruling 02-1p and evaluated Ms. Richards's obesity.   *See Castel v. Comm'r of Soc. Sec.*, 355 Fed. Appx. 260, 264 (11th Cir. 2009) (ALJ properly considered claimant's obesity when the ALJ acknowledged the diagnosis of obesity, cited SSR 02-1p, and determined that the claimant's obesity was a severe impairment).

Substantial evidence supports the ALJ's residual function assessment for Ms. Richards.

### B.   Substantial Evidence Supports the ALJ's Decision to Give Dr. Julian's Opinion Little Weight.

Ms. Richards contends that the ALJ did not give adequate weight to the opinion of her treating psychiatrist, Dr. Rachel Julian.   An ALJ must give considerable weight to a treating physician's medical opinion if the opinion is supported by the evidence and consistent with the doctor's records.   *See Winschel*, 631 F.3d at 1179.   An ALJ may refuse to give the opinion of a treating physician "substantial or considerable weight… [if] 'good cause' is shown to the contrary." *Phillips v. Barnhart,* 357 F.3d 1232, 1240-41 (11th Cir. 2004).   Good cause exists when "(1) [the] treating physician's opinion was not bolstered by the evidence; (2) [the] evidence supported a contrary finding; or (3) [the] treating physician's opinion was conclusory or inconsistent with the doctor's own medical records." *Id.* 1240-41; *see also Crawford,* 363 F.3d at 1159.   The ALJ "must state with particularity the weight given to different medical opinions and the reasons

therefor." *Gaskin v. Comm'r of Soc. Sec.*, 533 Fed. Appx. 929, 931 (11th Cir. 2013) (internal quotation and citation omitted).

In this case, the ALJ gave little weight to Dr. Julian's opinion because the opinion was inconsistent with Dr. Julian's treatment notes, treatment notes from other physicians, and findings from consultative examiners.  The ALJ also found that Dr. Julian's opinion was inconsistent with Ms. Richards's activities of daily living.  Substantial evidence supports the ALJ's decision to give little weight to Dr. Julian's opinion because the opinion is inconsistent with the evidence in the administrative record.

In March 2012, Dr. Julian completed a pre-printed questionnaire for Ms. Richards.  (Doc. 7-10, pp. 73-74).  Dr. Julian found marked impairments in all areas of functioning: activities of daily living; maintaining social functioning; deficiencies in concentration, persistence, or pace resulting in frequent failure to complete tasks in a timely manner (in work setting or elsewhere); ability to respond to customary work pressures; ability to understand, carry out, and remember instructions in a work setting; ability to respond appropriately to supervision and co-workers in a work setting; and ability to perform repetitive tasks in a work setting.  (Doc. 7-10, p. 73-74).  Dr. Julian stated that no psychological evaluation was obtained for purposes of the opinion, and Dr. Julian

did not express an opinion about whether Ms. Richards's impairments had lasted or could be expected to last for 12 months.  (Doc. 7-10, p. 74).

Dr. Julian's March 2012 assessment is at odds with Ms. Richards's medical records.  In August 2011, Dr. Julian noted that Ms. Richards was feeling much better, that she was "busy and active [with] family and friends" and "doing OK overall."  (Doc. 7-10, p. 4).  In December 2011, consultative examiner Dr. Holly Deemer evaluated Ms. Richards and found no evidence of psychosis.  (Doc. 7-10, p. 38).  Dr. Deemer found that Ms. Richards was able to perform many of the activities of daily living.  (*Id.*).  Dr. Deemer diagnosed Ms. Richards with "Major Depressive Disorder, recurrent, severe with psychotic features" and "Suspected Below Average Intellectual Functioning," and Dr. Deemer noted that Ms. Richards's "medication regimen is very helpful although she reported difficulty getting her medications due to lack of transportation and finances."  (Doc. 7-10, p. 39).  Based on her examination, Dr. Deemer concluded:

> it is expected that Ms. Richards would be able to understand, recall, and carry out only simple instructions consistent with the types of jobs she has held in the past. She appears able to respond appropriately to supervision, coworkers, and work pressures in a work setting with her current medication regimen, although it seems her psychiatric status is fragile.  Her prognosis is stable.

(Doc. 7-10, p. 39).

In January 2012, Dr. Carolyn Horton performed a consultative examination of Ms. Richards.  (Doc. 7-10, pp. 42-44).  Ms. Richards "appear[ed] to be

experiencing symptoms of depression which were reported to show improvement with her current medication." (Doc. 7-10, p. 44). Dr. Horton found that Ms. Richards was "functioning in the overall borderline range of intelligence" and had poor vision "even though she was wearing glasses." (Doc. 7-10, p. 44). Based on her examination, Dr. Horton concluded that Ms. Richards "has the ability to understand, carry out and remember simple work instructions consistent with the types of jobs she has done in the past. With her current medications, she should be able to respond appropriately to supervision and coworkers in a low stress work setting." (Doc. 7-10, p. 44).

Dr. Julian's opinion contradicts not only Ms. Richards's medical reports but also Ms. Richards's description of her activities of daily living. *See Wind v. Barnhart*, 133 Fed. Appx. 684, 692 (11th Cir. 2005) (ALJ may consider a claimant's daily activities when making a RFC determination). In her adult function report, Ms. Richards stated that she cleans her landlord's home in exchange for rent. (Doc. 7-7, p. 15). Ms. Richards testified at her hearing and in her adult function report that she does laundry and light cleaning, interacts with friends and family, finishes tasks she starts, and follows spoken instructions "pretty well." (Doc. 7-3, pp. 23-24, 50, 52; Doc. 7-7, p. 20).

Because substantial evidence in the record supports the ALJ's conclusion that Dr. Julian's opinion is inconsistent with medical evidence in the record and

Ms. Richards's activities of daily living, the Court finds that the ALJ had good cause to give the treating psychiatrist's opinion less weight. *See e.g.*, *Crawford,* 363 F.3d at 1159-61 (substantial evidence supported the ALJ's decision to discredit the opinions of the claimant's treating physicians where the physicians' opinions regarding claimant's disability were inconsistent with the physicians' treatment notes and unsupported by the medical evidence); *Good v. Astrue,* 240 Fed. Appx. 399, 403 (11th Cir. 2007) (ALJ identified good cause to reject the treating physician's opinion in part because "the opinion was inconsistent with the other evidence in the record from [the claimant's] own testimony").

## V.      CONCLUSION

For the reasons discussed above, the Court finds that the ALJ's decision is supported by substantial evidence, and the ALJ applied proper legal standards. The Court will not reweigh the evidence or substitute its judgment for that of the Commissioner.  Accordingly, the Court affirms the Commissioner.  The Court will enter a separate final judgment consistent with this memorandum opinion.

**DONE** and **ORDERED** this June 30, 2016.

**MADELINE HUGHES HAIKALA**
UNITED STATES DISTRICT JUDGE